**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444; (213) 252-0091 facsimile
E-mail: manncook@earthlink.net

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BRANDSTETTER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RIVERSIDE, a municipal corporation; RIVERSIDE POLICE DEPARTMENT, a public entity; Chief POLICE CHIEF LARRY V. GONZALEZ, an individual; Riverside Police Det. JOLYNN TURNER, an individual; and Does 1 through 10, all sued in their individual capacities<br><br>Defendants. | Case No. 2:20-cv-8246<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**1.  Unreasonable Search - Fourth Amendment / 42 U.S.C. § 1983**<br><br>**2.  Injunctive Relief / Fourth Amendment / 42 U.S.C. § 1983**<br><br>**3.  Violations of State Law / Cal. Const., Art. I §§ 7, 13; Cal. Civil Code § 52.1(c)**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

00140219.WPD

## I.   JURISDICTION AND VENUE.

1. Plaintiff's claims arise under 42 U.S.C. §1983 and state law. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2. Plaintiff's claims arise out of, *inter alia*, acts of personnel employed by the City of Riverside and/or the Riverside Police Department, acts which caused injury to Plaintiff in the County of Los Angeles. Accordingly, venue is proper within the Central District of California.

## II. PARTIES.

3. Plaintiff John Brandstetter, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles.

4. Defendant City of Riverside ("City") is a municipal corporation organized and existing under the laws of the State of California. Defendant Riverside Police Department ("RPD") is a public entity with the meaning of California law, and is a local governmental entity as that term is understood under 42 U.S.C. § 1983.

5. Defendant Larry V. Gonzalez ("Gonzalez"), an individual, was and is the RPD Chief of Police. Plaintiff sues Gonzalez in his individual and official capacities.

6. Defendant Jolynn Turner ("Turner"), an individual, was at all times material hereto, a RPD police detective. Plaintiff sues Turner in her individual official capacity only.

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES, and therefore sues these defendants by fictitious names. Plaintiff will give notice of their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that defendant DOES are responsible in some manner for the damages and injuries hereinafter complained of.

00140219.WPD

8. The complained of acts and omissions were performed by persons within the course and scope of employment with their employer, the City and/or RPD. All acts and omissions were under color of state law.

## III.    FACTS COMMON TO ALL CLAIMS.

*A. Kevin Mathew Gleason.*

9. Kevin Mathew Gleason ("Gleason") is an adult male, whom Plaintiff is informed and believes and based thereon alleges, is estranged from his spouse Desiree Denelle Gleason ("Desiree").

10. In late 2019 or early 2020, through a family member Plaintiff was asked if he would permit Gleason to stay at Plaintiff's single family residence in Rosemead, California. Gleason, Plaintiff is informed, needed a place to stay as Plaintiff was told Gleason was in-between jobs. Given the source of the request -- from a trusted family member -- Plaintiff agreed. Plaintiff had no reason to suspect that Gleason was a defendant in a criminal case, or that he had an outstanding warrant.

11. Gleason was a respectful and cooperative resident at Plaintiff's home. Gleason was quiet and caused no difficulties of any type. When Gleason moved in, he brought ordinary personal items that caused Plaintiff no concern; Gleason did not bring any firearms or other weapons. While staying at Plaintiff's home, Gleason rarely if ever was visited by others.

12. Unbeknown to Plaintiff, Gleason was a criminal defendant in *People v. Kevin Matthew [sic] Gleason*, Riverside Superior Court No. RIF1602435 (filed May 18, 2016) ("2016 case"). The 2016 case charges Gleason with a single count of violating Cal. Pen. Code § 487(b)(3), grand theft. The allegations are that over a period of months, Gleason allegedly embezzled about $1,100 from Walmart (the victim) where Gleason was an employee. Plaintiff is informed and believes and based thereon alleges that in connection

with the 2016 case, there was and is *no* claim that Gleason used a weapon, was violent, had made threats of any type or had done anything that suggested he was a danger to anyone. Rather, according to Walmart it was a case of a store employee stealing cash from the cash register where he worked.

13. In the 2016 case, Plaintiff is informed and believes that on or about May 23, 2016, the Riverside Superior Court issued a warrant for Gleason's arrest after he allegedly failed to appear for his arraignment. The warrant, Plaintiff is informed, listed Gleason's address at an apartment in the City of Riverside. Perhaps because Gleason had moved from the Riverside address, Plaintiff is informed that the warrant was never executed and remained outstanding.

14. Plaintiff is informed that separate and apart from anything having to do with the 2016 case, on or about May 2020 Gleason's estranged wife Desiree went to the RPD to complain that Gleason was supposedly extorting, or attempting to extort money from Desiree. More specifically, Plaintiff is informed and believes and based thereon alleges that Desiree informed defendant Turner that Gleason told her he had surreptitiously video-recorded and/or photographed Desiree, and that Gleason was "blackmail[ing] me, threaten[ing] and intimidat[ing] me with pictures and videos that would be considered of sexual content and nature." Plaintiff is further informed and believes and based thereon alleges that apart from the claim of blackmail as she described it, Desiree did *not* inform or tell Turner that Gleason had threatened her with violence, or that had he made threats of violence towards anyone else. Plaintiff is further informed and believes and based thereon alleges that neither Turner nor anyone else associated with the RPD investigation into Desiree's allegations, uncovered any evidence that Gleason was violent. Plaintiff is informed and believes and based thereon alleges that Turner and the RPD checked readily available law enforcement databases regarding firearms ownership and found no evidence

that Gleason owned or possessed a firearm.

15. As a result of Desiree's complaints, Plaintiff is informed and believes and based thereon alleges that Turner checked Gleason's criminal history as maintained by local, state and federal criminal history data systems, and found the 2016 case. Plaintiff is informed and believes and based thereon alleges that probably as a result of information obtained from Desiree, Turner learned that Gleason was residing at Plaintiff's home in Rosemead, California, in Los Angeles County. Thereafter, Plaintiff is informed Turner set about obtaining a warrant for Gleason's arrest at Plaintiff's Rosemead residence.

*B. Turner's Application for the Search / Arrest Warrant.*

16. Plaintiff is informed that sometime in the first two weeks of June 2020, Turner prepared an application seeking an arrest warrant for Gleason at Plaintiff's Rosemead residence, and for a search warrant of Plaintiff's residence. Plaintiff is informed and believes and based thereon alleges that Turner drafted an unconstitutionally overbroad search warrant in that:

A. Turner swore out an affidavit for more than just authorization to arrest Gleason at Plaintiff's home. It appears Turner's affidavit falsely asserted that Mr. Gleason was physically violent and/or likely to harm officers, and/or likely to use firearms. Turner falsely claimed that firearms at Plaintiff's residence were "used as the means of committing a felony," "possessed by a person with the intent to use [them] as means of committing a public offense or [were] possessed by another whom he or she may have delivered it for the purpose of concealing it or preventing its discovery," and "tends to show that a felony has been committed or that a particular person has committed a felony." See **Exhibit A**, copy of search warrant.

00140219.WPD

B. Plaintiff is informed and based thereon alleges that Turner falsely claimed that it was necessary that searching officers seize all papers and records showing:

> the identity of persons who have dominion and control of the location, premises, automobile, or items to be seized, including delivered mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax information, payroll check stubs, keys and receipts for safe deposit box(es), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rental, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips . . . (**Exhibit A**);

C. Searching for and seizing the above items were unnecessary because Turner knew, Plaintiff is informed and believes and based thereon alleges, that *Plaintiff* was the sole homeowner of record; that Gleason was Plaintiff's guest or tenant; that Turner had *no* information that anyone other than Plaintiff and Gleason resided at Plaintiff's home; and finally Turner knew that Plaintiff was not suspected of any criminal wrongdoing, and was not suspected to be involved in any manner in any purportedly unlawful conduct by Gleason.

17. Plaintiff is informed and believes and based thereon alleges that based on Turner's fabricated claims, Turner obtained judicial authorization for a highly intrusive FBI SWAT team to execute the warrant.

*C. The Execution Of The Search / Arrest Warrant.*

18. At about 6:30 a.m. on June 19, 2020, Plaintiff is informed and believes and based thereon alleges that a heavily armed FBI SWAT team ("FBI"), consisting of about 10 to 14 officers, executed the search / arrest warrant at Plaintiff's residence. Before the

FBI executed the warrant, Plaintiff is informed and believes and based thereon alleges that Turner briefed the FBI agents, and repeated to them her false claims in her warrant affidavit that Gleason was potentially violent and possibly armed. As a proximate result of the false information Turner provided, the FBI executed the warrant in a highly intrusive and destructive manner.

19. The FBI broke down the driveway entrance gate, smashed open all exterior doors as well as numerous interior doors, destroyed security cameras, and proceeded to search Plaintiff's home in a highly unreasonable and intrusive manner -- flinging open cupboards and drawers and throwing out and about the contents, etc. Plaintiff is informed and believes and based thereon alleges that a proximate cause of this highly intrusive and unnecessary manner of search was defendant Turner telling the FBI to search for and retrieve all firearms, and all paperwork in Plaintiff's home that bear upon ownership of the residence and/or vehicles, banking information, and the like, even though such items and information were irrelevant to the underlying crime(s) under investigation.

20. During the warrant's execution, FBI agents handcuffed Plaintiff and held him under restraint for about an hour and a half. At Turner's direction and pursuant to the warrant, the FBI seized ten lawful firearms owned and/or in Plaintiff's possession. On behalf of the RPD, Turner subsequently took possession of the firearms. See **Exhibit B**, a list of the ten firearms seized.

*D. Subsequent Ratification and Refusal to Return Plaintiff His Firearms.*

21. Plaintiff is informed and believes and based thereon alleges that shortly after seizing Plaintiff's firearms, defendants Turner and RPD recognized that the firearms had no connection to any criminal activity, whether as contraband or evidence of crime. Defendants also realized (as they would later admit) that there was no investigatory purpose served by continuing to withhold from Plaintiff the firearms.

22. By letter dated and delivered July 24, 2020, through his counsel Plaintiff wrote defendant Gonzalez, informing him of Turner's misconduct in securing an unconstitutionally overbroad warrant. The letter informed Gonzalez that neither defendants nor anyone else has provided Plaintiff with the constitutionally-required notice and opportunity to reclaim his firearms. The letter also requested that the RPD return to Plaintiff his firearms. See **Exhibit C**, true copy of the letter.

23. Plaintiff is informed and believes and based thereon alleges that Gonzalez, as RPD chief and in response to the July 24, 2020 letter, took no steps to remedy the constitutional violations outlined in the letter. Plaintiff is informed that Gonzalez implicitly if not explicitly approved of the issuance of the search warrant, the seizure of Plaintiff's firearms, and the ongoing refusal to return the firearms to Plaintiff. Plaintiff is further informed and believes that RPD refuses to return the firearms even though the RPD has admitted that the department has no legitimate law enforcement justification for *not* returning the firearms.

24. By letter dated August 20, 2020 and delivered that day, Plaintiff (through his counsel) informed Gonzalez that Gleason has not resided at Plaintiff's home since June 19, 2020 (the day of search) and further, that Plaintiff will not allow Gleason to return to Plaintiff's home. Plaintiff again requested that the RPD return to Plaintiff the firearms, particularly given the RPD's admission that the firearms are of no evidentiary or investigative value *and* that Plaintiff was not a target of the search warrant nor is he suspected of any criminal activity or is otherwise unfit to possess the firearms. See **Exhibit D**, true copy of the letter.

25. Despite acknowledging there is no *constitutional* basis for continuing to hold Plaintiff's firearms, Gonzalez and the RPD refuses to return the firearms. Plaintiff is informed and believes and based thereon alleges that defendants refuse to return the

00140219.WPD

firearms unless and until Plaintiff secures authorization from the Bureau of Firearms, an agency within the California Department of Justice.

### FIRST CAUSE OF ACTION -UNCONSTITUTIONAL SEARCH / SEIZURE

### 42 U.S.C. § 1983 (Damages)

### (As Against All Defendants)

26. By this reference, Plaintiff re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

27. The procurement and execution of the search warrant (**Exhibit A**) violated Plaintiff's Fourth Amendment rights by (a) execution of an unconstitutionally overbroad warrant that resulted the seizure of property (the firearms) based on facts known to be false, and (b) executing the warrant in an unreasonable and needlessly destructive manner. Plaintiff is therefore entitled to recover compensatory and punitive damages from each defendant proximately caused by the execution of the warrant.

28. Plaintiff is informed and believes and based thereon alleges that defendant Gonzalez, policy maker for defendants City and RPD, is on notice that warrant was unconstitutionally overbroad and unconstitutionally authorized the seizure of property (the firearms) that should not have been seized. Despite such knowledge, defendant Gonzalez had ratified and/or approved the warrant and the seizure of firearms.

29. The acts alleged herein were the product of a custom, practice and/or policy of the Defendants, which custom, practice and/or policy caused the constitutional violations alleged herein.

### SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF

### 42 U.S.C. § 1983

### (As against all Defendants)

30. Plaintiff re-alleges and incorporates all previous and following paragraphs as

00140219.WPD

if fully set forth herein.

31. The present ongoing seizures of Plaintiff's firearms is without lawful justification in that the seizures were seized based on a warrant issued without probable cause for the firearms' seizures, and upon purported facts defendant Turner fabricated. Specifically, Turner knew or should have known that the were **not** "used as the means of committing a felony"; were **not** "possessed by a person with the intent to use [them] as means of committing a public offense [and] [were] [**not**] possessed by another whom he or she may have delivered it for the purpose of concealing it or preventing its discovery"; and did **not** "tend to show that a felony has been committed or that a particular person has committed a felony."

32. Defendants have acknowledged that presently there is no constitutional basis for defendants to maintain custody of the firearms, yet defendants refuse to return the firearms to Plaintiff. The ongoing seizures of Plaintiff's firearms, even if initially lawfully seized, is violating Plaintiff's Fourth Amendment rights. *Brewster v. Beck*, 859 F.3d 1194, 1197-98 (9th Cir. 2017).

33. Defendant Gonzalez, a policy maker for the City and RPD, has the authority to order or direct that the firearms be returned to Plaintiff, and is on notice that the continued wrongful retention of Plaintiff's firearms violates his rights under the Second, Fourth and Fourteenth Amendments to the United States Constitution, and parallel provisions of the California State Constitution. Despite such knowledge and Plaintiff's requests for her firearms, defendants refuse to release the firearms.

34. An actual and substantial controversy exists currently exists between Plaintiff and defendants that defendants are presently wrongfully withholding his firearms and are refusing to authorize the firearms' release, whereas Plaintiff contends that such actions are ongoing violations of his Second, Fourth and Fourteenth Amendments to the United

States Constitution, and parallel provisions of the California State Constitution. These ongoing violations of her constitutional rights constitute, Plaintiff contends, irreparable injury justifying equitable relief, under 42 U.S.C. § 1983, Cal. Const., Art. I §§ 1, 7, and Cal. Civ. Code § 52.1(c).

35. The acts alleged herein were the product of a custom, practice and/or policy of the Defendants, which custom, practice and/or policy caused the constitutional violations alleged herein.

### THIRD CAUSE OF ACTION  - STATE LAW CLAIMS
### (As Against Defendants City, RPD and Gonzalez Only)

36. By this reference, Plaintiff re-alleges and incorporates all previous paragraphs as if fully set forth herein.

37. The preparation and execution of the search warrant, the seizure of Plaintiff's firearms followed by the subsequently refusal to return the firearms, violates Plaintiff's rights as protected under:

    A. U.S. Const., Amend. IV & XIV;

    B. Cal. Const., Art. I §§ 7, 13;

    C. Cal. Civ. Code § 52.1(c).

38. Therefore, Plaintiff is entitled to recover compensatory and statutory damages as allowed by California law. Plaintiff is also entitled to injunctive relief for the ongoing violations, see Cal. Const., Art. I §§ and 13; Cal. Civ. Code § 52.1(c).

39. Defendants City and RPD are liable for damages for the wrongful acts and/or omissions of its employees or servants, pursuant to Cal. Gov't Code § 815.2.

40. Within six months of June 19, 2020, Plaintiff timely submitted to defendant City a properly filled-out and executed claim for damages, pursuant to Cal. Gov't Code § 910. Plaintiff is informed that defendant has denied that claim. This lawsuit is

commenced within six months of that denial.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

*On The First Cause of Action (against All Defendants)*:

1. That this Court award Plaintiff compensatory and punitive damages, according to proof;

2. That this Court award attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute;

*On The Second & Third Causes of Action (against Defendants City, RPD and Gonzalez):*

41. That this Court issue a declaration that the initial seizures of Plaintiff's firearms, and the subsequent refusal to release and return to Plaintiff his firearms, violated the Second, Fourth and Fourteenth Amendments to the United States Constitution, and Art. I §§ 1 and 7 of the California State Constitution;

42. That the Court issue a preliminary and permanent injunction on behalf of Plaintiff commanding defendants, and each of them, to release immediately to Plaintiff his firearms without payment of any further cost or expenses;

43. That this Court award attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, Cal. Civ. Code § 52.1(I), Cal. Civ. Proc. Code § 1021.5, California's private attorney general doctrine, and any other appropriate statute;

*On The Third Cause of Action (against Defendants City and RPD):*

44. That this Court award Plaintiff compensatory and statutory damages, according to proof;

45. That this Court award attorneys' fees and costs incurred in this action under

00140219.WPD

Cal. Civ. Code § 52.1(I), Cal. Civ. Proc. Code § 1021.5, California's private attorney general doctrine, and any other appropriate statute;

*On All Causes of Action (against all Defendants)*:

46. That the Court award costs of suit; and

47. And such other relief as the Court deems appropriate.

DATED: September 9, 2020

**DONALD W. COOK**
Attorney for Plaintiff

By _____
            Donald W. Cook

00140219.WPD

1

**DEMAND FOR JURY TRIAL**

2

    Plaintiff hereby demands a jury trial.

3

DATED: September 9, 2020

4

                    **DONALD W. COOK**

5

                    Attorney for Plaintiff

6

7

By _____

8

                    Donald W. Cook

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00140219.WPD

SERVICE COPY

# SEARCH WARRANT AND AFFIDAVIT
## State of California – County of Riverside

### (AFFIDAVIT)

Detective Jolynn Turner swears under oath that the facts expressed by him in this Search Warrant and Affidavit, in the attached and incorporated statement of probable cause are true and that based thereon she has probable cause to believe and does believe that the property and/or person described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this/her Search Warrant be issued.

_____
(Signature of Affiant)

HOBBS SEALING REQUESTED: ☐YES ☒NO
NIGHT SERVICE REQUESTED: ☐YES ☒NO

### (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER, OR PEACE OFFICER IN THE COUNTY OF RIVERSIDE: proof having been made, before me, by Detective Jolynn Turner, that there is probable cause to believe that at the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "X"(s) in that:

☐ It was stolen or embezzled,
☒ It was used as the means of committing a felony,
☒ It was possessed by a person with the intent to use it as means of committing a public offense or is possessed by another whom he or she may have delivered it for the purpose of concealing it or preventing its discovery,
☒ It tends to show that a felony has been committed or that a particular person has committed a felony,
☐ It tends to show that a sexual exploitation of a child in violation of Section 311.3, or depiction of sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring,
☐ There is a warrant for the person's arrest;

YOU ARE THEREFORE COMMANDED TO SEARCH (premises, vehicles, persons):
See ATTACHMENT "A"

FOR THE FOLLOWING PROPERTY/PERSON:
See ATTACHMENT "B"

AND TO SEIZE IT IF FOUND and bring it forthwith before me or to the appropriate courthouse within the County of Riverside. This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me this ___17___ day of, ___June___, 2020 at _12:15_ hour AM / PM. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

OATH OF THE AFFIANT ADMINISTERED TELEPHONICALLY: ☒YES ☐NO
HOBBS SEALING AUTHORIZED: ☐YES ☒NO
NIGHT SERVICE AUTHORIZED: ☐YES ☒NO

_____
(Signature of Magistrate)

LATTING
(Printed Name of Magistrate)

Judge of the Superior Court of California, County of Riverside. Department ___3 S___

Reviewed for legal sufficiency by: After Hours No DA Review

Police Report # 200010488

Page 1



# SEARCH WARRANT AND AFFIDAVIT
## ATTACHMENT A

You are therefore COMMANDED to SEARCH:

**THE PREMISES** located at _____ **Rosemead, CA 91770** is further described as a single family residence with light peach stucco and a light brown tile roof. The residence faces north and is located on the west side of the street. There is a concrete access driveway to the right/north of _____ . At the top of the drive way there is a green wrought iron fence with a "B" in the middle of the gate and an eagle below in wrought iron. Once you enter the gate the house is just to the the left/south of the gate.

The front door is white and is a double door with glass windows on the top portion of the door. There are three windows to the front of the residence on the north side of the residence. There is a brick chimney on the roof slightly west of the front door. The property is located on a large piece of property with numerous trees. There is a carport to the far west of the residence that is attached to the residence.

**THE PERSON** known as **Kevin Matthew Gleason**, described as a White male, who is approximately 33 years old, 6'00", 280 lbs., with a bald head and green eyes, with a birth date of _____ 1986, and CA Driver's license _____ ', SSN _____ , CII A31864747.

**ANY VEHICLE** in the immediate vicinity of _____ Rosemead CA 91770 and/or on the premises, that is in the custody or control of the Kevin Matthew Gleason as evidenced by ignition keys, car door keys, vehicle ownership documents in his or her possession or on his or her person, or under his or her dominion and control, or by statements of witnesses. Such search shall include containers of any kind within the vehicle.

**Federal Law Enforcement- Federal Bureau of Investigations SWAT TEAM**
The court authorizes the use of the Federal Bureau of Investigations (FBI) SWAT team personnel to accompany investigators and conduct the service and execution of this Search Warrant at _____ _____ Rosemead, California.

Police Report # 200010488

Page 2

# SEARCH WARRANT AND AFFIDAVIT

## ATTACHMENT B

For the FOLLOWING PROPERTY or PERSON(s): *(to be Seized)*

### Firearms:

Any handgun, pistol, revolver, rifle, shotgun, firearm, automatic weapon. In addition to any firearm, any spent casings, any miscellaneous gun/firearm pieces, ammunition, gun-cleaning items or kits, holsters, ammunition belts, original box packaging materials, (clips, magazines, cylinders, loading devices), targets, expended pieces of lead/bullets, any photographs of firearms, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above items.

### Computer(s) – Seizure (Non CAL-EPCA)

All electronic data processing and storage devices, cellular telephones, computers and computer systems, such as central processing units, internal and peripheral storage devices such as fixed disks, internal and external hard drives, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, dongles, encryption keys, personal data assistants (PDA's) or other memory storage devices; and any/all peripheral input/output devices such as keyboards, printers, video display monitors, optical readers and related communication devices such as modems, associated telephone sets, speed dialers, and/or other controlling devices, plotters, software to run programs, connecting cables and plugs, peripherals such as joysticks, mouses, or other input devices, scanners, writing pads, manuals, connecting switches, telephone and telephone cables, and interface devices; system documentation, operating logs and documentation, software and instructional manuals. Computing or data processing software, stored on any type of medium such as: hard disks, floppy disks, CD-R's, CD-RW's, DVD's, cassette tapes, or other permanent or transient storage medium.

Any records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic calendar\address books" calculators, or any other storage media, together with indicia of use, ownership, possession, or control of such records.

Any written or computer communication in printed or stored medium such as E-Mail and Chat Logs whether in active files, deleted files or unallocated space on the hard drive, floppy drive or any data storage media.

Police Report # 200010488                                                                      Page 3

# SEARCH WARRANT AND AFFIDAVIT

**Videotape, Photograph, Digital Image During Search Warrant Service**

Peace Officers or assigned representatives are authorized, during the execution of this Search Warrant, to video tape, photograph and/or take digital images, at the discretion of the Searching Officers, inside and outside of the location, any and all items and/or vehicles at the location, in addition, can identify and photograph and/or digital image all persons present at the Search Warrant location during the period of execution of this Search Warrant.

**Dominion & Control**

Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobiles, or items to be seized, including delivered mail, whether inside the location or in the mail box/s, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips, recordation of voice transmissions on telephone answering machines, audio tapes and telephone message receipt books, and written phone messages, and photographs tending to show occupation of the residence / business and connection between co-conspirators, whether identified, or unidentified, also digital pagers which will document telephone numbers of co-conspirators, and if found, to activate the digital pagers' display mechanism and to obtain messages from the pagers, answering machines, tape recorders, and any other recording devices, and to play such devices to obtain their messages. Any examples of handwriting including letters, address books, business records, canceled checks, notes, and/or lists.

Police Report # 200010488

Page 4

| BG0006 | WEAPON .40 PISTOL SEMI AUTO MODEL USP BBL 4 1-4 SN 221455 BLACK | |
|--------|---------------------------------------------------------------|--|
| | S/N: 22-1455/ / | |
| | Gun Make: HEC - Heckler & Koch | |
| | Weapon Type: P - PISTOL | HGRACK |
| | Weapon Category: I - SEMI-AUTO(autoloading) | |
| | Caliber: .40 | |
| | Model: USP | |
| BG0007 | SPESCO CORP .22 PISTOL REVOLVER MODEL R12 BBL 5 SN 119847 BLACK | |
| | S/N: 119847/ / | |
| | Gun Make: SPS - Spesco Corp. | |
| | Weapon Type: P - PISTOL | HGRACK |
| | Weapon Category: R - REVOLVER | |
| | Caliber: .22 LR | |
| | Model: R12 | |
| BG0008 | GERMAN .22 PISTOL REVOLVER MODEL 21 BBL 4 3-4 SN 411174 BLACK | |
| | S/N: 411174/ / | |
| | Gun Make: WG - West, Federal Republic of Germany | |
| | Weapon Type: P - PISTOL | HGRACK |
| | Weapon Category: R - REVOLVER | |
| | Caliber: .22 LR | |
| | Model: 21 | |
| BG0009 | STURM RUGER .44 PISTOL REVOLVER MODEL REDHAWK BBL 7 1-2 SN 50192187 CHROME | |
| | S/N: 501-92187/ / | |
| | Gun Make: SR - Sturm Ruger | |
| | Weapon Type: P - PISTOL | HGRACK |
| | Weapon Category: R - REVOLVER | |
| | Caliber: 44 MAGNUM | |
| | Model: REDHAWK | |
| BG0010 | JD MACHINE MULTI CAL RIFLE SEMI AUTO MODEL TR 1 BBL 0 SN 15486 BLACK | |
| | S/N: 15486/ / | |
| | Gun Make: JDM - JD Machine Tech, Inc. | |
| | Weapon Type: R - RIFLE | XLRACK |
| | Weapon Category: I - SEMI-AUTO(autoloading) | |
| | Caliber: MULTI .223/5.56 | |
| | Model: TR 1 | |
| BG0011 | MARLIN 30-30 RIFLE LEVER ACTION MODEL 336 BBL 20 1-4 SN 7093430 BROWN | |
| | S/N: 70 93430/ / | |
| | Gun Make: MAR - Marlin Firearms Co | |
| | Weapon Type: R - RIFLE | LGRACK |
| | Weapon Category: L - LEVER ACTION | |
| | Caliber: 30-30 | |
| | Model: 336 | |
| BG0012 | WINCHESTER .22 RIFLE PUMP MODEL 1890 BBL 24 SN 505945 BROWN | |
| | | LGRACK |

200-14-1/10-89   Crystal 8.5 Version

Page 1 of 2

**List of Firearms Seized**          -19-          **EXHIBIT B**

| | | |
|---|---|---|
| | S/N: 505945/ / <br> Gun Make: WIN - Winchester <br> Weapon Type: R - RIFLE <br> Weapon Category: P - PUMP ACTION <br> Caliber: 22 <br> Model: 1890 | |
| BG0013 | WINCHESTER .22 RIFLE SEMI AUTO MODEL 190 BBL 21 SN B1672481 BROWN <br> S/N: B1672481/ / <br> Gun Make: WIN - Winchester <br> Weapon Type: R - RIFLE <br> Weapon Category: I - SEMI-AUTO(autoloading) <br> Caliber: 22 <br> Model: 190 | LGRACK |
| BG0014 | MARLIN FIREARMS .22 RIFLE SEMI AUTO MODEL GLENFIELD 60 BBL 22 SN:71402668 BROWN <br> S/N: 71402668/ / <br> Gun Make: MAR - Marlin Firearms Co <br> Weapon Type: R - RIFLE <br> Weapon Category: I - SEMI-AUTO(autoloading) <br> Caliber: 22 <br> Model: GLENFIELD 60 | XLRACK |
| BG0015 | JC HIGGINS 12 GAUGE SHOTGUN PUMP MODEL 20 BBL 28 SN 2ANTIQUE BROWN <br> S/N: 2ANTIQUE/ / <br> Gun Make: HIG - J.C. Higgins <br> Weapon Type: S - SHOTGUN <br> Weapon Category: P - PUMP ACTION <br> Caliber: 12 GAUGE <br> Model: 20 | XLRACK |

* Last Item *

200-14-1/10-89   Crystal 8.5 Version

**List of Firearms Seized**                    **-20-**                    **EXHIBIT B**

**DONALD W. COOK**
*Attorney at Law*
3435 Wilshire Blvd., Ste. 2910, Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile

Donald W. Cook

Samantha R. Koerner

July 24, 2020

**By Mail & Facsimile (951) 826-2512**

Police Chief Larry V. Gonzalez
Riverside Police Department
4102 Orange St.
Riverside, CA 92501

> Incident date / time: June 19, 2020 @ 6:30 a.m.
> Incident type: Execution of search warrant procured by Riverside PD
> Riverside PD Report No.: 2000010488
> Riverside Police Officer: Det. Jolynn Turner
> My client / victim: John Brandstetter

Dear Chief Gonzalez:

This letter is a two-fold request:

*First*: the immediate release and return to my client John Brandstetter, the firearms and ammunition seized pursuant to the above search warrant.

*Second*: a personnel complaint and investigation of misconduct by Det. Jolynn Turner in swearing out an affidavit in support of the above warrant, where the affidavit made material and false allegations of fact, allegations Det. Turner knew were false, such as that firearms, including those lawfully possessed by my client, were:

- "used as the means of committing a felony";

- "possessed by a person with the intent to use [them] as means of committing a public offense or [were] possessed by another whom he or she may have delivered it for the purpose of concealing it or preventing its discovery";

- "tends to show that a felony has been committed or that a particular person has committed a felony."

Furthermore, Det. Turner recklessly and needlessly called for the execution of the search warrant (which included an arrest warrant for another person) by the FBI SWAT team, as if such a high-risk and intrusive warrant execution team was necessary. In fact, Det. Turner had *no* information that the arrest warrant subject, one Kevin Gleason, was violent or prone to violence, nor did she have any information that anyone residing at the search location, posed a significant risk of injury to anyone.

Finally, even though Det. Turner knows that the firearms seized pursuant to the search warrant were lawfully possessed by my client John Brandstetter and were *not* used in the commission of any crime, the Riverside PD and Det. Turner refuse to release and return the firearms to my client. Indeed, Det. Turner has ignored all phone calls Mr. Brandstetter has made to her in an effort to secure the release of the firearms.

00139614.WPD

**7/24/20 Letter**                                       **EXHIBIT C**

Police Chief Larry V. Gonzalez
July 24, 2020
Page 2

*Factual Background*

Desiree Danelle Gleason is the estranged wife of Kevin Gleason. I am informed that in May and/or June 2020, Det. Turner was investigating a claim by Ms. Gleason that Mr. Gleason was extorting her, or threatening to do so, in violation of Cal. Pen. Code § 518. In particular, I am informed that according to Ms. Gleason, Mr. Gleason was trying to extort from Ms. Gleason money and sexually explicit videos depicting Ms. Gleason, by threatening to publicly disseminate private videos and photographs involving Ms. Gleason and her mother. According to Ms. Gleason's account, Mr. Gleason admitted to having surreptitiously and unlawfully obtain videos and private information about Ms. Gleason in violation of her rights. Significantly, Ms. Gleason's accusations did *not* include any claim that Mr. Gleason had threatened her or anyone else with violence. Nor did she accuse him of either possessing firearms, or threatening to use firearms in any manner.

I am informed that in the course of her investigation, Det. Turner learned that Kevin Gleason was wanted as the defendant in *People v. Kevin Gleason*, Riverside No. RIF1602435 (filed 5/18/16). That case charges him with felony grand theft in violation of Cal. Pen. Code § 487(b)(3) -- he allegedly stole / embezzled about $1,100 from his then-employer, Wal-Mart. A felony arrest warrant issued in 2016, and gave Mr. Gleason's home address in the City of Riverside (3553 Lou Ella Ln., #14). The warrant was still outstanding. This alleged crime, as with the 2020 § 518 charge, did *not* include any accusation that Mr. Gleason had threatened anyone with violence, nor of having threatened anyone with any weapon, whether or not a firearm.

I am informed that Det. Turner also learned that Mr. Gleason no longer resided at his Riverside address, that he was, as of May/June 2020, living at the single family residence at Rosemead (Los Angeles County), CA 91770. That is my client John Brandstetter's home (he is the owner of record). At the request of a family member, beginning in late 2019 or early 2020 Mr. Brandstetter allowed Mr. Gleason to live at his home. (My client was unaware of Mr. Gleason's outstanding criminal matter.)

Apparently recognizing that the law requires a new warrant be obtained to arrest Mr. Gleason at the Rosemead address, Det. Turner, on or about June 17, 2020, swore out an affidavit to obtain one. Det. Turner, however, sought more than just authorization to arrest Mr. Gleason. It appears that Det. Turner's warrant application falsely asserted that Mr. Gleason was physically violent and/or likely to harm officers, and/or likely to use firearms. Det. Turner claimed that firearms at the Rosemead residence were "used as the means of committing a felony," "possessed by a person with the intent to use [them] as means of committing a public offense or [were] possessed by another whom he or she may have delivered it for the purpose of concealing it or preventing its discovery," and "tends to show that a felony has been committed or that a particular person has committed a felony." Based on these fabricated claims, Det. Turner obtained judicial authorization for a highly intrusive FBI SWAT team to execute the warrant.

Unsurprisingly and predictably, when the FBI SWAT team executed the warrant, they (a) did not give adequate knock-notice, and (b) were needlessly destructive of doors, windows and other fixtures and personal property. Furthermore, at the direction of Det. Turner, agents seized and turned over to the Riverside PD, the following firearms from Mr. Brandstetter's home:

1. Heckler & Kock USP 40 caliber pistol;
2. Ruger Redhawk 44 magnum revolver;
3. Spesco 22 caliber revolver;

00139614.WPD

**7/24/20 Letter**

**EXHIBIT C**

Police Chief Larry V. Gonzalez
July 24, 2020
Page 3

    4. JD Arms AR15 rifles (lower) (3);
    5. Marlin 30/30 rifle;
    6. Winchester 22 caliber rifle (2);
    7. Marlin 22 rifle;
    8. 22 caliber revolver;
    9. Higgins 12 gauge shotgun; and
    10. Sears shotgun.

Also seized was ammunition for the above firearms.

Since the June 19 search, Mr. Brandstetter has called Det. Turner repeatedly, using the phone number she left at his home ((951) 353-7241). Despite leaving numerous messages and explaining he sought the return of property the police seized, she has not returned his calls.

It is now more than a month since the seizure of Mr. Brandstetter's firearms and ammunition. He has yet to receive any notice from anyone on when, how, or if his firearms will be returned. Not only was the seizure of the firearms and ammunition unlawful -- none were implicated in any criminal activity -- Riverside PD's continued unlawful retention is occurring without any notice and opportunity being provided to Mr. Brandstetter for reclaiming his property. *Bryte v. City of La Mesa*, 207 Cal.App.3d 687, 689 (1989) ("There is no question but that firearms and weapons are 'property' and, accordingly, that the due process clauses of the federal and state Constitutions apply to their seizure. A person's property may not be confiscated by the state without 'some kind of notice and opportunity to be heard.' ").

On behalf of Mr. Brandstetter, I request that the Riverside PD release and return to him immediately his firearms and ammunition seized June 19. If by August 4, 2020, his property is not returned, on Mr. Brandstetter's behalf I will pursue every legal remedy including, as against the Riverside PD and involved personnel, injunctive relief that commands Riverside to return the firearms. Finally, I request that Det. Turner be investigated for her fabrications and misstatements made in support of the search warrant application, and that appropriate disciplinary measures be taken. If you need to interview Mr. Brandstetter in connection with an investigation, please contact my office and not him, and I will arrange for and make Mr. Brandstetter available for an interview. Thank you.

    Sincerely,

    Donald W. Cook

DWC:ms

cc: Det. Jolynn Turner

00139614.WPD

**DONALD W. COOK**
*Attorney at Law*

3435 Wilshire Blvd., Ste. 2910, Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile

Donald W. Cook

---

Samantha R. Koerner

August 20, 2020

**By Mail & Facsimile (951) 826-2512**

Police Chief Larry V. Gonzalez
Riverside Police Department
4102 Orange St.
Riverside, CA 92501

       Incident date / time: June 19, 2020 @ 6:30 a.m.
       Incident type: Execution of search warrant procured by Riverside PD
       Riverside PD Report No.: 2000010488
       Riverside Police Officer: Det. Jolynn Turner
       My client / victim: John Brandstetter

Dear Chief Gonzalez:

       Pursuant to my July 29, 2020 conversation with Riverside Sgt. Baird, this letter is to advise the Riverside police department that Kevin Gleason, the target of the above search warrant, does not reside at my client's home (searched June 19, 2020). Mr. Gleason has not resided there since the June 19 search, and under no circumstances will      my client permit Mr. Gleason to reside or even visit my client's home. Before June 19, my client did not know that Mr. Gleason was wanted by law enforcement, and did not know he had pending criminal charge(s) against him. Had my client known, he would not have permitted Mr. Gleason to reside at his home. I am informing you of these facts because in speaking with Sgt. Baird, he confirmed my client was *not* a target of the search warrant, nor does the Riverside PD suspect Mr. Brandstetter of any criminal activity of any type. Sgt. Baird further stated the Riverside PD has no objection to my client reclaiming his firearms Det. Turner seized on June 19 upon receipt of this letter confirming that Mr. Gleason does not reside at my client's home and will not be residing there.

       Regarding the firearms Det. Turner seized, it is apparent Det. Turner seized the firearms because of a belief they had some connection to possible criminal activity by Mr. Gleason. In speaking with Sgt. Baird, I understand the Riverside PD does not believe or contend that my client's firearms are contraband or evidence of crime, or that the firearms must remain confiscated for some other reason. Given that, the Riverside PD's original justification for seizing the firearms has lapsed. Hence, the Riverside PD is under a constitutional obligation to return the firearms to my client. *Brewster v. Beck*, 859 F.3d 1194, 1197-98 (9th Cir. 2017). Please advise if the Riverside PD will release my client's firearms forthwith. Thank you.

                Sincerely,

                Donald W. Cook

DWC:ms

cc: Det. Jolynn Turner

00139955.WPD